IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,          3:12-cr-00538-BR
                                         (3:17-cv-00690-BR)
        Plaintiff,

                                   OPINION AND ORDER

v.

ANGELEDITH SARAMAYLENE SMITH,

        Defendant.


**BILLY J. WILLIAMS**
United States Attorney
**CRAIG J. GABRIEL**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204
(503) 727-1107

        Attorneys for Plaintiff

**KENDRA M. MATTHEWS**
Boise Matthews LLP
Sixth+Main
1050 S.W. Sixth Avenue
Suite 1400
Portland, OR 97204-1174
(503) 228-0487

        Attorneys for Defendant

**BROWN, Senior Judge.**

This matter comes before the Court on Defendant Angeledith Saramaylene Smith's First Amended Motion (#283) Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by A Person in Federal Custody. For the reasons that follow, the Court **DENIES** Defendant's Motion and **DECLINES** to issue a Certificate of Appealability.

<u>BACKGROUND</u>

On October 11, 2012, Defendant Angeledith Saramaylene Smith and Tana Chris Lawrence were charged in an Indictment with Murder in the First Degree. Specifically, the Indictment alleged on September 29, 2012, Smith and Lawrence "with malice aforethought, did unlawfully kill Faron Lynn Kalama . . . in the perpetration of, or in the attempt to perpetrate, kidnapping, aggravated sexual abuse, sexual abuse, and burglary" in violation of 18 U.S.C. §§ 1111, 1201 (a)(2), 2241(a), 2242 and Oregon Revised Statutes § 164.225.

On November 6, 2012, Smith and Lawrence were charged in a Superseding Indictment with Murder in the First Degree on the same grounds as those stated in the initial Indictment.

On September 16, 2013, Smith filed a Motion to Dismiss the Superseding Indictment on various grounds including that the Oregon burglary statute is not a permissible predicate for felony

murder charged under 18 U.S.C. §§ 1111 and 1153.

On October 17, 2013, Smith and Lawrence were charged in a Second Superseding Indictment with two counts of Murder in the First Degree.  Count One alleged on September 29, 2012, Smith and Lawrence

> with malice aforethought, did unlawfully kill Faron Lynn Kalama, in the perpetration of, or in the attempt to perpetrate, Burglary in the First Degree, in violation of Oregon Revised Statute 164.225, that is:
>
> > (a) In the District of Oregon . . . defendants LAWRENCE and SMITH . . . did unlawfully and knowingly enter and remain in a dwelling located at 2237 Elliot Heights, Warm Springs, Oregon, with intent to commit a crime therein, that is, Assault With A Dangerous Weapon With Intent To Do Bodily Harm, in violation of 18 U.S.C. § 113(a)(3);
>
> All in violation of 18 U.S.C. §§ 1111, 1153, 2.

Count Two alleged on September 29, 2012, Smith and Lawrence

> with malice aforethought, did unlawfully kill Faron Lynn Kalama, in the perpetration of, or in the attempt to perpetrate, kidnapping, in violation of 18 U.S.C. § 1201(a)(2), that is:
>
> > (a) In the District of Oregon . . . defendants LAWRENCE and SMITH . . . did unlawfully seize, confine, kidnap, abduct, and carry away Faron Lynn Kalama and held her for a benefit;
>
> All in violation of 18 U.S.C. §§ 1111, 1153, 2.

On November 1, 2013, the government filed its Response to Smith's Motion to Dismiss and advised the Court that Smith's objections to the Superseding Indictment had been resolved by the

Second Superseding Indictment except for Smith's assertion that the Oregon burglary statute is not a permissible predicate for felony murder charged under 18 U.S.C. §§ 1111 and 1153.

On November 14, 2013, the Court entered an Order in which it noted the parties had advised the Court that Smith's Motion to Dismiss the Superseding Indictment was moot. The Court, therefore, set a briefing schedule for any motions against the Second Superseding Indictment.

Also on November 14, 2013, Smith and Lawrence were charged in a Third Superseding Indictment with three counts of Murder in the First Degree. Count One alleges on September 29, 2012, Smith and Lawrence

> with malice aforethought, did unlawfully kill Faron Lynn Kalama, in the perpetration of, or in the attempt to perpetrate, Burglary in the First Degree, in violation of Oregon Revised Statute 164.225, that is:
>
> > (a) In the District of Oregon . . . defendants LAWRENCE and SMITH . . . did unlawfully and knowingly enter and remain in a dwelling located at 2237 Elliot Heights, Warm Springs, Oregon, with intent to commit a crime therein, that is, Assault With A Dangerous Weapon With Intent To Do Bodily Harm, in violation of 18 U.S.C. § 113(a)(3);
>
> All in violation of 18 U.S.C. §§ 1111, 1153, 2.

Count Two alleges on September 29, 2012, "at a time separate and subsequent to the offense described in Count 1," Smith and Lawrence

> with malice aforethought, did unlawfully kill

Faron Lynn Kalama, in the perpetration of, or in the attempt to perpetrate, Burglary in the First Degree, in violation of Oregon Revised Statute 164.225, that is:

(a) In the District of Oregon . . . defendants LAWRENCE and SMITH . . . did unlawfully and knowingly enter and remain in a dwelling located at 2237 Elliot Heights, Warm Springs, Oregon, with intent to commit a crime therein, that is, Assault With A Dangerous Weapon With Intent To Do Bodily Harm, in violation of 18 U.S.C. § 113(a)(3);

All in violation of 18 U.S.C. §§ 1111, 1153, 2.

Count Three alleges on September 29, 2012, Smith and Lawrence

with malice aforethought, did unlawfully kill Faron Lynn Kalama, in the perpetration of, or in the attempt to perpetrate, kidnapping, in violation of 18 U.S.C. § 1201(a)(2), that is:

(a) In the District of Oregon . . . defendants LAWRENCE and SMITH . . . did unlawfully seize, confine, kidnap, abduct, and carry away Faron Lynn Kalama and held her for a benefit;

All in violation of 18 U.S.C. §§ 1111, 1153, 2.

On November 18, 2013, the Court held an arraignment hearing on the Third Superseding Indictment and set a briefing schedule for any motions against the Third Superseding Indictment.

On December 5, 2013, before the deadline for any motions against the Third Superseding Indictment had passed, Smith pled guilty to the third count of Murder in the First Degree.

On April 16, 2014, the Court held a sentencing hearing, granted the government's Motion to Dismiss Counts One and Two of the Third Superseding Indictment as to Smith, and sentenced Smith

to a term of life imprisonment.

On April 17, 2014, the Court entered a Judgment.

On May 1, 2014, Smith filed a Notice of Appeal to the Ninth Circuit.

On January 14, 2016, the Ninth Circuit issued a Mandate affirming Smith's sentence and conviction.

On April 7, 2016, Smith filed a Petition for Writ of Certiorari to the United States Supreme Court.

On May 23, 2016, the Supreme Court denied Smith's Petition for Writ of Certiorari.

On May 1, 2017, Smith filed a Motion (#248) Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence on the ground of ineffective assistance of counsel.

On January 11, 2018, Smith filed a First Amended Motion (#248) Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence on the ground of ineffective assistance of counsel. The Court took this matter under advisement on June 24, 2019.


## STANDARDS

28 U.S.C. § 2255 provides in pertinent part:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right
> to be released upon the ground that the sentence
> was imposed in violation of the Constitution or
> laws of the United States, or that the court was
> without jurisdiction to impose such sentence, or
> that the sentence was in excess of the maximum
> authorized by law, or is otherwise subject to

collateral attack, may move the court which
imposed the sentence to vacate, set aside or
correct the sentence.

* * *

If the court finds that the judgment was rendered
without jurisdiction, or that the sentence imposed
was not authorized by law or otherwise open to
collateral attack, or that there has been such a
denial or infringement of the constitutional
rights of the prisoner as to render the judgment
vulnerable to collateral attack, the court shall
vacate and set the judgment aside and shall
discharge the prisoner or resentence him or grant
a new trial or correct the sentence as may appear
appropriate.

Although "the remedy [under § 2255] is . . . comprehensive,

it does not encompass all claimed errors in conviction and

sentencing. . . .  Unless the claim alleges a lack of

jurisdiction or constitutional error, the scope of collateral

attack [under § 2255] has remained far more limited." *United

States v. Addonizio*, 442 U.S. 178, 185 (1979).


**DISCUSSION**

Smith moves to vacate her conviction and sentence on the

ground that she received ineffective assistance of counsel and

asserts eighteen bases for her claim.  Specifically, Smith

alleges counsel provided ineffective assistance when they

1.    failed to file a motion to dismiss the Third

      Superseding Indictment in order to assert that all

      counts of the Third Superseding Indictment failed to

allege an offense;

2.  recommended "Smith plead guilty to Count Three under the terms outlined in her plea agreement . . . because Count Three, as alleged in the Third Superseding Indictment, failed to allege an offense";

3.  "failed to move for an arrest of judgment under Federal Rules of Criminal Procedure . . . 34, after the change of plea, asserting that the case should be dismissed because Count Three failed to state an offense";

4.  advised Smith "to plead guilty pursuant to a plea agreement in which the government could ask for no more than 35 years of imprisonment without adequately understanding or advising defendant Smith of the risk that the court would impose a sentence of life imprisonment";

5.  failed to negotiate a plea agreement in which Smith would not have to waive her right to an appeal in the event the Court imposed a sentence of life imprisonment;

6.  "failed to negotiate a plea agreement under Federal Rules of Criminal Procedure, Rule 11(c)(1)(C), that would have bound . . . Smith's guilty plea to an agreement by the Court to impose a sentence within a term of years, as opposed to life imprisonment";

7.   "failed to object to the government's breach of the
     plea agreement at sentencing when it compared . . .
     Smith's case unfavorably with other cases in the
     District of Oregon, described . . . Smith's conduct as
     worse than that of other defendants in the district,
     and made other statements that contradicted its promise
     and obligation to sincerely argue for imposition of no
     more than 35 years' imprisonment";

8.   failed to consider the possibility that the Court would
     impose a sentence above the maximum term recommended by
     the government;

9.   "failed to object to the government presenting partial
     sentencing information about other cases in the
     District of Oregon, failed to request more information
     about those cases, failed to request more time to
     address those cases, and failed to adequately address
     those cases at sentencing";

10.  "failed to object to the Court's separate request for
     sentencing materials from other cases in the District
     of Oregon";

11.  "failed to object to the Court's reliance on its own
     memory and recollection of the details from other
     murder cases in the District of Oregon as a basis for
     its conclusion that [Smith's] case was not sufficiently

similar to those other cases to justify a sentence of less than life imprisonment";

12. "failed to obtain and present to the Court . . . sentencing data that would have provided the Court with a meaningful basis of comparison when the Court was determining what sentence to impose";

13. "[w]hen, at sentencing, the Court's statements made it plain that the Court considered defendants' conduct worse than that of others convicted of First Degree Murder in the District of Oregon, defense counsel failed to move for a continuance on the basis that the defense had not had a fair or meaningful opportunity to understand, evaluate, and present information about those cases";

14. "failed to advise the Court that because attorney Winemiller had represented one of the defendants the Court was comparing to . . . Smith, ethical restrictions precluded the defense from engaging in a full and fair comparison of the two defendants, putting defendant Smith in a constitutionally untenable disadvantage";

15. "invited a comparison to Oregon law in defendant Smith's sentencing submission and then pursued that comparison at sentencing";

16. failed to argue on appeal that "the government's breach of a plea agreement warranted remand for re-sentencing before a different judge";

17. failed to argue on appeal that "the 'harmless error' rule did not apply to the law of contractual plea agreements and by failing to petition the appellate court for reconsideration or en banc review after it affirmed the sentence"; and

18. "[t]o the extent that this Court were to conclude that the constitutional deprivations viewed individually were harmless, not prejudicial, or otherwise not warranting relief, it must conclude that the cumulative effect of the multiplicity of errors (in any combination) does."

The government asserts the Court should deny Smith's Motion in its entirety.

## I. Standards

The Supreme Court has established a two-part test to determine whether a defendant has received constitutionally deficient assistance of counsel. *Premo v. Moore*, 131 S. Ct. 733, 739 (2011). *See also Strickland v. Washington*, 466 U.S. 668, 678, 687 (1984). Under this test a defendant must not only prove counsel's assistance was deficient, but also that the deficient performance prejudiced the defense. *Premo*, 131 S. Ct. at 739.

*See also Sexton v. Cozner,* 679 F.3d 1150, 1159 (9th Cir. 2012);
*Ben-Sholom v. Ayers*, 674 F.3d 1095, 1100 (9th Cir. 2012).

"To prove deficiency of performance, the defendant must show
counsel made errors so serious that performance fell below an
objective standard of reasonableness under prevailing
professional norms." *Mak v. Blodgett*, 970 F.2d 614, 618 (9th
Cir. 1992)(citing *Strickland*, 466 U.S. at 687-88)). *See also
Sexton*, 679 F.3d at 1159 (citing *Premo*, 131 S. Ct. at 739). The
court must inquire "whether counsel's assistance was reasonable
considering all the circumstances" at the time of the assistance.
*Strickland*, 466 U.S. at 688. *See also Detrich v. Ryan*, 677 F.3d
958, 973 (9th Cir. 2012). There is a strong presumption that
counsel's assistance was adequate. *Strickland,* 466 U.S. at 689.
*See also Sexton*, 679 F.3d at 1159.

To prove prejudice "[t]he defendant must show that there is
a reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
*Strickland,* 466 U.S. at 694. *See also Sexton*, 679 F.3d at 1159-
60. "A reasonable probability is a probability sufficient to
undermine confidence in the outcome." *Strickland*, 466 U.S. at
695. *See also Sexton*, 679 F.3d at 1160.

The court "need not determine whether counsel's performance
was deficient before examining the prejudice suffered by the
defendant." *Strickland,* 466 U.S. at 697. *See also Heishman v.*

*Ayers*, 621 F.3d 1030, 1036 (9th Cir. 2010). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland,* 466 U.S. at 697. *See also Heishman*, 621 F.3d at 1036.

## DISCUSSION

As noted, Smith alleges 18 bases for her claim of ineffective assistance of counsel.

## I.   Ineffective Assistance Claims Based on the Indictments

As noted, Smith alleges trial counsel[1] provided ineffective assistance when they failed to file a motion to dismiss the Third Superseding Indictment on the ground that none of the counts alleged an offense. Specifically, Smith asserts defense counsel "should have argued that neither Oregon's burglary statute, ORS 164.225, nor the federal kidnapping statute at 18 U.S.C. § 1201(a)(2), may be a predicate felony to support a conviction for Felony Murder under 18 U.S.C. § 1111(a)."

### A.   Oregon Revised Statutes § 164.225 as a Predicate to Felony Murder

In Counts One and Two of the Third Superseding Indictment the government alleged Smith and Lawrence "with malice

---

[1] Smith was represented by Kristen Winemiller and Lisa Maxfield at all times before her appeal.

aforethought, did unlawfully kill Faron Lynn Kalama, in the perpetration of, or in the attempt to perpetrate, Burglary in the First Degree, in violation of Oregon Revised Statute 164.225." Smith asserts counsel provided ineffective assistance when they failed to assert Oregon's burglary statute is not a predicate felony that can support a conviction for felony murder under § 1111(a).

The government asserts defense counsel was not ineffective for failing to assert Oregon's burglary statute was not a predicate felony that could support a conviction for felony murder because it was not until nearly three years after the government filed the Third Superseding Indictment that the Ninth Circuit held state burglary statutes could be too broad to support burglary as a predicate to federal felony murder. *See United States v. Reza-Ramos*, 816 F.3d 1110 (9th Cir. 2016).

The Ninth Circuit has made clear that counsel are not ineffective for failing to anticipate a decision in a later case. *See, e.g., Styers v. Schriro*, 547 F.3d 1026, 1032 (9th Cir. 2008) ("Styers relies almost exclusively on our decision in *Daniels v. Woodford*, 428 F.3d 1181 (9th Cir. 2005). . . . However, *Daniels* was issued almost fifteen years after Styers' voir dire proceedings. . . . As such, Styers cannot rest his ineffective assistance of counsel claim on *Daniels*."); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994)(holding an attorney is not

ineffective for failing to anticipate a decision in a later case).

Because the Ninth Circuit did not hold until three years after the government filed the Third Superseding Indictment that state burglary statutes could be too broad to support burglary as a predicate to federal felony murder, the Court concludes defense counsel's performance did not fall below an objective standard of reasonableness under the then-existing prevailing professional norms when they failed to challenge the Third Superseding Indictment on the ground that Oregon's burglary statute is too broad to be a predicate felony that can support a conviction for felony murder under § 1111(a). Accordingly, the Court concludes defense counsel was not ineffective when they failed to challenge the Third Superseding Indictment on that ground.

**B.    Kidnapping under 18 U.S.C. § 1201 as a Predicate to Felony Murder**

Smith also asserts her counsel was ineffective when they failed to file a motion to dismiss Count Three of the Third Superseding Indictment on the ground that the federal kidnapping statute, 18 U.S.C. § 1201(a)(2), is not a predicate felony that can support a conviction for Felony Murder under 18 U.S.C. § 1111(a). Specifically, Smith contends although Congress added kidnapping to the list of predicate crimes in the Felony Murder statute, 18 U.S.C. § 1111(a), that list does not reference 18

U.S.C. § 1201.  According to Smith, therefore, Congress intended only generic kidnapping to qualify as a predicate felony to support a charge of felony murder.  Smith notes the Ninth Circuit has concluded "the generic definition of kidnapping encompasses, at a minimum, the concept of a 'nefarious purpose[]' motivating restriction of the victim's liberty."  *United States v. Gonzalez-Perez*, 472 F.3d 1158, 1161 (9th Cir. 2007).  Federal kidnapping under § 1201, however, only requires the kidnapping to be "for a benefit."  Smith asserts because the Third Superseding Indictment alleged only § 1201 as the predicate offense for the charge of felony murder and, and, therefore, it alleged only that Lawrence and Smith kidnapped Kalama "for a benefit," the Third Superseding Indictment failed to allege an offense.  According to Smith, therefore, defense counsel was ineffective when they failed to move to dismiss the Third Count on this basis.

The government, however, asserts there was not any authority that indicated kidnapping under § 1201 could not serve as a predicate offense to felony murder at the time of the Third Superseding Indictment.  Moreover, the government asserts Smith could not have established prejudice in any event because if defense counsel had moved to dismiss the Third Count on that basis, the government would have amended the Third Superseding Indictment to allege nefarious purpose, which is supported by the evidence.

The Court concludes it was not entirely clear in 2013 whether kidnapping under § 1201 could serve as a predicate offense to felony murder. The Court, however, concludes Smith has not established "there is a reasonable probability that, but for counsel's [alleged] error[], the result of the proceeding would have been different." As noted, the government has made clear that if defense counsel had moved to dismiss the Third Court on the ground that § 1201 could not serve as a predicate offense to felony murder, the government would have amended the Third Superseding Indictment to allege generic kidnapping as the predicate offense and to allege a "nefarious purpose" for the kidnapping. In addition, based on the record before the Court at the time of the Third Superseding Indictment, the Court would have concluded the facts supported an allegation of nefarious purpose.

Accordingly, the Court concludes defense counsel was not ineffective when they failed to challenge the Third Superseding Indictment on the ground that § 1201 could not serve as a predicate offense to felony murder.

**II. Ineffective Assistance Claims Based on the Plea Agreement**

Smith alleges a number of ineffective-assistance claims based on defense counsel's performance during the plea-agreement process. Specifically, Smith alleges defense counsel were ineffective when they:

1. recommended "Smith plead guilty to Count Three under the terms outlined in her plea agreement . . . because Count Three, as alleged in the Third Superseding Indictment, failed to allege an offense";

2. "failed to move for an arrest of judgment under Federal Rules of Criminal Procedure . . . 34, after the change of plea, asserting that the case should be dismissed because Count Three failed to state an offense";

3. advised Smith "to plead guilty pursuant to a plea agreement in which the government could ask for no more than 35 years of imprisonment without adequately understanding or advising defendant Smith of the risk that the court would impose a sentence of life imprisonment";

4. failed to negotiate a plea agreement in which Smith would not have to waive her right to an appeal in the event the Court imposed a sentence of life imprisonment; and

5. "failed to negotiate a plea agreement under Federal Rules of Criminal Procedure, Rule 11(c)(1)(C), that would have bound . . . Smith's guilty plea to an agreement by the Court to impose a sentence within a term of years, as opposed to life imprisonment."

## A.    Background

On December 5, 2013, Smith pled guilty to Count Three
of the Third Superseding Indictment.  Under the Plea Agreement
the government agreed to dismiss Counts One and Two of the Third
Superseding Indictment against Smith; to recommend a three-level
downward adjustment for acceptance of responsibility under United
States Sentencing Guideline (U.S.S.G.) § 3E1.1; to file a motion
for a U.S.S.G. § 5K1.1[2] downward departure based on Smith's
cooperation; and to recommend "a sentence of no longer than 35
years (420 months) in prison."  Smith agreed not to ask the Court
to impose a sentence of less than 25 years, waived her right to
appeal her conviction and sentence on any grounds "except for a
claim that the sentence imposed exceed[ed] the statutory
maximum," and waived her right to file a collateral attack on her
sentence on any ground other than ineffective assistance of
counsel.  Both parties agreed the Plea Agreement was made
pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), and,
therefore, the sentencing "recommendation[s] or request[s] [did]
not bind the court."

The Plea Petition signed by Smith noted the "Court is
not bound to follow an agreement the parties have reached.  I am

---

[2] U.S.S.G. § 5K1.1 provides:  "Upon motion of the government
stating that the defendant has provided substantial assistance in
the investigation or prosecution of another person who has
committed an offense, the court may depart from the guidelines."

not entitled to withdraw my guilty pleas if the Court does not

follow our plea agreement." The Plea Petition also noted the

maximum sentence

> that can be imposed for the crime to which I am
> pleading guilty is life imprisonment.

> \* \* \*

> My attorney has discussed with me the Federal
> Sentencing Guidelines, which are advisory and not
> mandatory. As I understand it, the Court will
> consider the factors listed in 18 U.S.C. §3553(a),
> along with the advisory guideline range
> established by the United States Sentencing
> Guidelines (USSG), to determine a reasonable
> sentence that does not exceed the statutory
> maximum. If my attorney or any other person has
> calculated an advisory guideline range for me, I
> know that this is only a prediction and that it is
> the judge who makes the final decision as to the
> guideline range, the degree to which other factors
> weigh upon her decision and the sentence to be
> imposed. I understand that the factors the Court
> will consider, under 18 U.S.C. §3553(a), include
> the nature and circumstances of the offense, my
> personal history and characteristics, the goals of
> punishment, deterrence, protection and
> rehabilitation that sentencing is meant to
> achieve, and what sentence is reasonable under the
> totality of the circumstances.

Plea Pet. (Docket #134) at ¶¶ 10, 13.

At the December 5, 2013, change-of-plea hearing Smith

advised the Court that she had spent enough time with her

attorney to understand the nature and seriousness of the charge

against her, to understand the evidence the government had to

support the charges, and to discuss her options including her

right to go to trial. The Court also engaged in the following

discussion with Smith:

>THE COURT:        As counsel noted, Murder in the First
>                  Degree carries a mandatory sentence of
>                  life in prison unless the Government
>                  makes a motion for a sentence less than
>                  life.  If the Government makes such a
>                  motion, then I have the authority to
>                  impose a sentence less than life.  Do
>                  you understand?
>
>THE DEFENDANT: Yes, your Honor.
>
>THE COURT:        So one thing you've bargained for here
>                  is that the Government's agreed to make
>                  that motion to open the door so that I
>                  . . . have the authority to consider
>                  whether a sentence other than life
>                  should be imposed.  Do you understand?
>
>THE DEFENDANT: Yes, your Honor.
>
>THE COURT:        But the agreement in no way guarantees
>                  to you a sentence of any kind.  Do you
>                  understand that?
>
>THE DEFENDANT: Yes, I do, your Honor.
>
>THE COURT:        So the agreement is actually between you
>                  and the prosecutor's office, but not the
>                  Court.  I'm not allowed to negotiate
>                  with you or to bargain with you or to
>                  make you any promises or assurances,
>                  except to tell you that I will do my
>                  best to fulfill my oath to impose what
>                  is required by law, which is a
>                  reasonable sentence. . . .  Do you
>                  understand?
>
>THE DEFENDANT: Yes, I do, your Honor.
>
>                           * * *
>
>THE COURT:        So under this agreement, the
>                  Government's promising to dispose of all
>                  of the other charges in exchange for
>                  your guilty plea, to recommend a
>                  sentence no higher than 35 years, and in

```
                    return, among other things, you're
                    agreeing to ask for a sentence no lower
                    than 25 years. . . .  Do you understand?

THE DEFENDANT: Yes, I do, your Honor.

                            * * *

THE COURT:          So . . . you don't have any right to
                    appeal.  There's no condition under
                    which you'll be able to challenge this
                    in a higher court.  Do you understand?

THE DEFENDANT: Yes, I do, your Honor.

THE COURT:          You're also giving up the right to bring
                    what's called a collateral attack,
                    post-conviction relief.  Our
                    Constitution recognizes that people who
                    are sitting in custody in a federal
                    prison have the right to complain if
                    they can make the case that there was
                    somehow a violation of their
                    constitutional rights that led to the
                    confinement.  You're giving up the right
                    to make that kind of challenge, too,
                    except on grounds you're not permitted
                    to give up.  The most often-cited ground
                    for post-conviction relief is so-called
                    ineffective assistance of counsel.
                    Blaming the lawyers for the process that
                    resulted in whatever sentence.  Do you
                    understand?

THE DEFENDANT: Yes.
```

Def.'s First Am. Mot. to Vacate, Ex. 105 at 14-19.  The Court

found Smith was fully competent; was making a "a knowing,

intelligent, and voluntary waiver of [her] rights"; and her

guilty plea was "knowing, intelligent, and voluntary."  *Id.* at

34.  The Court also found there was a sufficient "factual basis

to find [Smith] guilty of Murder in the First Degree as alleged

in Count 3 on the felony murder charge that the Government has expressed." *Id*.

**B.    Standards**

"Defendants' . . . Sixth Amendment right to counsel . . . extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012)(citation omitted). *See also Padilla v. Ky.*, 559 U.S. 356, 364 (2010)(same). Accordingly, "[d]uring plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" *Lafler*, 566 U.S. at 162 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

"In *Hill*, the Court held 'the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel.'" *Lafler,* 566 U.S. at 162 (quoting *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). In *Missouri v. Frye* the Supreme Court made clear that "the standard laid out in *Hill*" continues to apply when a defendant asserts ineffective assistance of counsel at the plea stage "led him to accept a plea offer as opposed to proceeding to trial." 566 U.S. 134, 147 (2012). *See also Lafler*, 566 U.S. at 162-63 (contrasts facts in *Lafler* to circumstances in *Hill* in which ineffective assistance of counsel led the defendant to plead guilty rather than to proceed to trial). Thus, when evaluating a claim of ineffective assistance of counsel based on an allegation that counsel's ineffective performance led the defendant to plead guilty rather

than to proceed to trial, the Court must determine whether the
defendant has shown "'there is a reasonable probability that, but
for counsel's errors, [the defendant] would not have pleaded
guilty and would have insisted on going to trial.'" *Lafler*, 566
U.S. at 162 (quoting *Hill*, 474 U.S. at 59).

"A reasonable probability is a probability sufficient
to undermine confidence in the outcome." *Strickland*, 466 U.S. at
695. *See also Smith v. Almada*, 640 F.3d 931, 940 (9th Cir.
2011). In addition, the test to determine the validity of a
guilty plea remains "whether the plea represents a voluntary and
intelligent choice among the alternative courses of action open
to the defendant." *Hill*, 474 U.S. at 56. *See also Mahoney*, 611
F.3d at 988.

### C.    Failures Related to Sufficiency of the Indictment

As noted, Smith asserts defense counsel was ineffective
when they "failed to move for an arrest of judgment under Federal
Rules of Criminal Procedure . . . 34, after the change of plea,
asserting that the case should be dismissed because Count Three
failed to state an offense" and when they recommended Smith plead
guilty to Count Three "because Count Three, as alleged in the
Third Superseding Indictment, failed to allege an offense."

The Court has already concluded defense counsel was not
ineffective when they failed to move to dismiss the Third
Superseding Indictment on the ground that it failed to allege an

offense.  For the same reasons, the Court concludes defense counsel was not ineffective when they failed to move for an arrest of judgment under Rule 34 or when they recommended Smith plead guilty to Count Three of the Third Superseding Indictment.

### D.   Failures of Plea Negotiation

Smith asserts defense counsel made "numerous errors in negotiating the plea agreement."  Specifically, Smith asserts defense counsel provided ineffective assistance of counsel when they advised Smith "to plead guilty pursuant to a plea agreement in which the government could ask for no more than 35 years of imprisonment without adequately understanding or advising defendant Smith of the risk that the court would impose a sentence of life imprisonment"; failed to negotiate a plea agreement in which Smith would not have to waive her right to an appeal in the event the Court imposed a sentence of life imprisonment; and/or "failed to negotiate a plea agreement under Federal Rules of Criminal Procedure, Rule 11(c)(1)(C), that would have bound . . . Smith's guilty plea to an agreement by the Court to impose a sentence within a term of years, as opposed to life imprisonment."

### 1.   Adequate Understanding of Risk of Life Imprisonment

As noted, Smith asserts defense counsel provided ineffective assistance of counsel when they advised Smith "to

plead guilty pursuant to a plea agreement in which the government could ask for no more than 35 years of imprisonment without adequately understanding or advising defendant Smith of the risk that the court would impose a sentence of life imprisonment."

Even if defense counsel failed to understand or to advise Smith of the risk that the Court could impose a life sentence, which is questionable, the record reflects Smith was adequately advised of this risk both in the language of the Plea Agreement and by the Court. As noted, the Plea Agreement provided the "Court is not bound to follow an agreement the parties have reached" and that "the maximum sentence that can be imposed for the crime to which I am pleading guilty is life imprisonment." In addition, the Court was very clear at Smith's plea hearing about the fact that the maximum sentence for the crime to which Smith pled guilty was life imprisonment and that the Court did not have to follow the Plea Agreement. As noted, the Court advised Smith:

> Murder in the First Degree carries a mandatory sentence of life in prison unless the Government makes a motion for a sentence less than life. If the Government makes such a motion, then I have the authority to impose a sentence less than life . . . . [O]ne thing you've bargained for here is that the Government's agreed to make that motion to open the door so that I . . . have the authority to consider whether a sentence other than life should be imposed. . . . But the agreement in no way guarantees to you a sentence of any kind. . . . [T]he agreement is actually between you and the prosecutor's office, but not the Court. I'm not allowed to negotiate with you

> or to bargain with you or to make you any promises
> or assurances, except to tell you that I will do
> my best to fulfill my oath to impose what is
> required by law, which is a reasonable sentence.

Def.'s First Am. Mot. to Vacate, Ex. 105 at 14.  Smith indicated she understood the crime to which she was pleading guilty had a maximum sentence of life imprisonment, that the Court did not have to follow the Plea Agreement, and that she was not guaranteed a sentence "of any kind."  Thus, even if defense counsel did not adequately understand or advise Smith that there was a risk that the Court could impose a sentence of life imprisonment, Smith has not established she was prejudiced by counsel's failure because Smith was thoroughly advised by the Court and by the terms of the Plea Agreement that the Court was not bound by its terms and that the Court could impose a life sentence.

Accordingly, the Court concludes defense counsel was not ineffective when they advised Smith to plead guilty even if they failed to advise "defendant Smith of the risk that the court would impose a sentence of life imprisonment."

### 2. Plea Negotiations

Smith alleges she received ineffective assistance of counsel when they failed to negotiate a plea agreement in which Smith "would not have to waive her right to an appeal in the event the Court imposed a sentence of life imprisonment" and/or "failed to negotiate a plea agreement under Federal Rules

27 - OPINION AND ORDER

of Criminal Procedure, Rule 11(c)(1)(C), that would have bound
. . . Smith's guilty plea to an agreement by the Court to impose
a sentence within a term of years, as opposed to life
imprisonment."

The Supreme Court has made clear that "defendants have
'no right to be offered a plea . . . nor a federal right that the
judge accept it.'" *Lafler*, 566 U.S. at 168 (quoting *Frye*, 566
U.S. at 148). Defense counsel, therefore, was not required to
negotiate a plea, to negotiate specific plea terms, or to
negotiate a specific kind of plea. In addition, appellate
waivers are regularly included in plea deals and "are supported
by public policy considerations." *United States v. Lopez
Sanchez*, No. 2:14-CR-00245-KJM, 2018 WL 1305730, at *3 (E.D. Cal.
Mar. 13, 2018)(citing *United States v. Littlefield*, 105 F.3d 527,
530 (9th Cir. 1997)("We have repeatedly noted that public policy
strongly supports plea agreements that include an appeal
waiver.")). In addition, according to the government, the appeal
waiver "formed an integral part of the *quid pro quo* that provided
Smith [with] substantial benefits"; *i.e.*, the government's
agreement to move for a sentence less than life imprisonment and
to drop Counts One and Two of the Third Superseding Indictment.
The government notes in its Response to Smith's Motion that if
defense counsel had "sought an appellate waiver more favorable to
Smith or a plea under Rule 11(c)(1)(C), Smith likely would have

received a less favorable plea deal."

On this record the Court finds defense counsel's failure to negotiate (1) a plea agreement in which Smith did not have to waive her right to appeal in the event the Court imposed a sentence of life imprisonment and/or (2) a plea agreement under Rule 11(c)(1)(C) did not fall "below an objective standard of reasonableness." Accordingly, the Court concludes defense counsel was not ineffective when they failed to negotiate such a plea agreement.

## III. Ineffective Assistance Claims Based on Sentencing

Smith asserts defense counsel committed numerous errors at sentencing. Specifically, Smith asserts defense counsel erred when they:

1. "failed to object to the government's breach of the plea agreement at sentencing when it compared . . . Smith's case unfavorably with other cases in the District of Oregon, described . . . Smith's conduct as worse than that of other defendants in the district, and made other statements that contradicted its promise and obligation to sincerely argue for imposition of no more than 35 years' imprisonment";

2. failed to consider the possibility that the Court would impose a sentence above the maximum term recommended by the government;

3. "failed to object to the government presenting partial
   sentencing information about other cases in the
   District of Oregon, failed to request more information
   about those cases, failed to request more time to
   address those cases, and failed to adequately address
   those cases at sentencing";

4. "failed to object to the Court's separate request for
   sentencing materials from other cases in the District
   of Oregon";

5. "failed to object to the Court's reliance on its own
   memory and recollection of the details from other
   murder cases in the District of Oregon as a basis for
   its conclusion that [Smith's] case was not sufficiently
   similar to those other cases to justify a sentence of
   less than life imprisonment";

6. "failed to obtain and present to the Court . . .
   sentencing data that would have provided the Court with
   a meaningful basis of comparison when the Court was
   determining what sentence to impose";

7. "[w]hen, at sentencing, the Court's statements made it
   plain that the Court considered defendants' conduct
   worse than that of others convicted of First Degree
   Murder in the District of Oregon, defense counsel
   failed to move for a continuance on the basis that the

defense had not had a fair or meaningful opportunity to understand, evaluate, and present information about those cases";

8. "failed to advise the Court that because attorney Winemiller had represented one of the defendants the Court was comparing to . . ., ethical restrictions precluded the defense from engaging in a full and fair comparison of the two defendants, putting defendant Smith in a constitutionally untenable disadvantage"; and

9. "invited a comparison to Oregon law in defendant Smith's sentencing submission and then pursued that comparison at sentencing."

## A. Background

On March 13, 2014, the Probation Office prepared a Presentence Report (PSR) in which it recommended the Court to impose the maximum sentence the government could seek under the terms of the Plea Agreement (420 months) and suggested the "brutal torture" employed in the crime indicated the Court should not grant a variance.

On April 9, 2014, the government filed a Sentencing Memorandum in which it identified a number of cases involving first-degree murder on the Warm Springs Reservation that did not result in life sentences.

On April 15, 2014, the Court notified the parties that it had requested the Probation Officer to prepare a report listing cases within the District of Oregon in which the court had imposed life sentences. On April 15, 2014, the Probation Office provided to the Court and the parties a memorandum detailing cases in which the court as a whole had imposed life sentences and cases in which the court had merely imposed lengthy sentences.

On April 16, 2014, the Court held a sentencing hearing for Smith and Lawrence. Smith, Lawrence, and the government requested the Court to hear a sentencing presentation on behalf of Lawrence without the presence of Smith and then a separate proceeding on behalf of Smith without the presence of Lawrence. The Court approved the parties' request. Accordingly, counsel for Smith and Lawrence made separate sentencing presentations with only the pertinent defendant present, and the government made separate presentations for Smith and Lawrence as well. At the conclusion of all of the presentations the Court sentenced Smith and Lawrence.

During the government's presentation related to Lawrence's sentence AUSA Craig Gabriel advised the Court that the government was moving for a one-level departure under U.S.S.G. § 5K1.1 for Lawrence's substantial assistance and set out the factual bases for the government's recommendation. AUSA Gabriel

then reiterated that the government "stand[s] by the plea agreement" and requested a 32-year sentence for Lawrence. Def.'s First Am. Mot. to Vacate, Ex. 106 at 82. The Court inquired whether AUSA Gabriel would like to "speak to any comparators specifically." *Id.* AUSA Gabriel indicated he wanted to address comparators, and the Court and AUSA Gabriel then engaged in the following exchange:

> MR. GABRIEL:  Yes, your Honor. I -- first, with respect to the prior sentences imposed for Murder in the First Degree, I think a sentence of 32 years for Ms. Lawrence falls within the heartland, to use language we used to use, of those cases.
>
> We've had cases that have resolved for 30 years. Cases that have resolved for 35 years, where there were two deaths. A case that resolved for 40 years.
>
> But Ms. Lawrence's behavior was -- it was just more heinous. It was more horrific.
>
> THE COURT:  None of those cases involved prolonged torture.
>
> MR. GABRIEL:  Right.
>
> THE COURT:  And what might be called conduct that would qualify for aggravated murder analysis under state law. Conduct in the course of the commission of multiple felony crimes over many hours and on a repeated basis. So this case does seem to stand apart from the others, the other murder cases.
>
> MR. GABRIEL:  It does. Mr. Williams and I were speaking this morning. We went to the Oregon state code. It's not a relevant factor under 3553(a), but this is

probably an ag murder case in state court because there was an intent to torture and maim the victim here.

THE COURT:     And if it was a state prosecution, the state of Oregon, if it had jurisdiction, would have the option to seek the death penalty for such a case?

MR. GABRIEL:   Correct.  If the defendants had been convicted of aggravated murder, the state court judge or the jury would have had three options:  Death, life – true life, without parole, or life with the possibility of parole after 30 years, day for day.

THE COURT:     And so my point, with respect to the reference to the other murder cases . . . all having sentences that you say I should match in that range, involve conduct that was not as egregious, as brutal, or as prolonged as the defendant and Ms. Smith engaged in.  So I'm skeptical about the argument that the sentence you're recommending is comparable, because I'm concerned . . . this case really doesn't have a comparator.  And, therefore, the Court's duty to avoid unwarranted disparity is an academic one because there really has not been anything reasonably comparable that I know of.  Am I missing something there on the facts?

MR. GABRIEL:   I don't believe you're missing anything on the facts of what happened that day. This is -- at least in the last 14 years -- the worst murder that has come . . . to federal jurisdiction.

THE COURT:     So if it's the worst of the worst, and appreciating you have a contractual obligation not to argue for more than 35 years, or 32 years, I'm still questioning the validity of your argument that the sentence you're recommending is appropriate in part

because it is comparable to the other
sentences, because I don't think it is.

* * *

So do you want to comment on the other
cases that the Probation Office brought
to my attention, where life sentences
were imposed and nobody died? Life
sentences were imposed in cases of
aggravated child pornography, in cases
of violent bank robbery, nobody died,
and yet life sentences were imposed?

MR. GABRIEL:       Your Honor, I will comment on those
briefly.  The facts in those cases speak
for themselves.  Nobody died.

The criminal history of some of these
defendants[, however,] was much worse
than the criminal history of these
defendants.

* * *

And then with respect to the child
exploitation cases, in those cases, even
though somebody may not have died, those
cases addressed prolific child
pornography producers, who were habitual
offenders.  And the social science does
say that the recidivism rate for sex
offenders such as that is so incredibly
high, that they present a dangerousness
for the rest of –

THE COURT:         So you mentioned Congressional intent.
And certainly Congress has spoken with
respect to the risk to the community in
those kinds of violations.  But Congress
also spoke in Murder in the First
Degree, to say that it should be
mandatory life.

MR. GABRIEL:       Well, the statute does require life.
But the defendants -- both defendants
did provide substantial assistance,
which relieves the Court from the
obligation to impose life.  But,

obviously, it's the most -- or among the
                          most serious crimes in the entire code.
                          We don't dispute that.

        THE COURT:        Why is the sentence you're seeking
                          sufficient, given the seriousness of the
                          criminal behavior at issue here?

        MR. GABRIEL:      We believe it's sufficient with respect
                          to Ms. Lawrence specifically because she
                          was 20 years old at the time.  And she
                          had the childhood that . . . led her to
                          a place where she was easily involved in
                          a situation; that she's taken
                          responsibility for.  She acted
                          voluntarily, knowingly, with malice
                          aforethought.  But she was put in a
                          situation where all of the violence that
                          had been done to her, she in turn
                          absolutely projected and attacked on
                          somebody else.  But we do believe that
                          her mental illness, her traumatic
                          childhood, including the neglect, the
                          sexual abuse, and her low IQ are
                          mitigating factors that may not have
                          been present in the other cases that
                          were presented to the Court for
                          comparison.

        THE COURT:        And her voluntary intoxication, which no
                          doubt played a part in the decision
                          making that day?

        MR. GABRIEL:      Not a defense and not mitigation.

Def.'s First Am. Mot. to Vacate, Ex. 106 at 82-87.

        During the government's sentencing presentation related

to Smith, AUSA Gabriel again moved for a one-level downward

departure under U.S.S.G. § 5K1.1 based on Smith's substantial

assistance and provided the Court with the bases for the

government's recommendation:

                During the lunch break, your Honor, I spoke with

Mr. Williams.  Mr. Williams litigated the case of
United States v. Ronald McKinley, Angelo Fuentes,
and Tony Gilbert.  And Ms. Winemiller represented
Ronald McKinley, who received a 480-month prison
sentence, and I don't think it would be helpful --
at least at this point -- to compare the brutality
of one case to the other.  But that murder, in
which Mr. McKinley received 40 years, Mr. Fuentes
30, and Mr. Gilbert approximately 20, was a tragic
horrible murder as well.  And so we stand by the
statement that the murder here of Faron Kalama was
the worst, but it could be conditioned with was
arguably the worst or among the worst because of
that McKinley murder, 13, 14 years ago.

Def.'s First Am. Mot. to Vacate, Ex. 106 at 113-14.

After the parties' presentations the Court evaluated

the facts of the crime as well as the government's recommended

sentence and stated:

The Court's duty today is to impose a sentence on
each of these two young women, Ms. Smith and
Ms. Lawrence, who each have their own tragic
stories.  The requirement, as I noted earlier, is
to impose a sentence that is reasonable in law,
that's defined as what would be sufficient but not
greater than necessary to accomplish a number of
purposes set out by statute.

* * *

[T]he legally correct starting point for guideline
analysis for each of the defendants is a life
sentence because that is the sentence mandated by
law for Murder in the First Degree. . . .  [T]he
guideline is considered to be a life sentence.
That's where this analysis would end but for the
fact that the Government has made a motion under
the Guideline 5K1.1 for a one-level departure,
meaning a reduction from the guideline range of
life.  The motion is based on the cooperation of
each of the defendants to varying degrees.

* * *

It is always up to the Government to determine
whether such a motion should be made.  And so I
emphasize, again, that had the Government not made
the motion, the Court's sentencing analysis would
end with the guideline of life imprisonment.  The
Government having made the motion, the Court is
required to consider it.

* * *

But it does not, by any means, relieve the Court
of the responsibility of considering any sentence
up to and including life.  The parties bring to
the Court a plea agreement, in each case, which
authorized the advocacy that each of the parties
made.  And so with that advocacy and with a
starting point of the guideline range, I'm
required to consider a number of factors.  The
first is the nature and the circumstances of the
offense.

* * *

[I]t is sufficient to say that the murder of Faron
Kalama was the end result of many hours of
extraordinary brutality each of the defendants
extended to her that, in my judgment, amounts to
torture.  This wasn't an incidental fight in the
heat of the motion.  It was prolonged.  It was
repetitive.  Defendants would leave only to return
again with one or the other taking the lead in
extraordinary violence.

* * *

The nature and the circumstances of the offense
could not be more serious.  And so that is a
factor that weighs significantly in favor of a
lengthy prison term.

The Court is to consider a sentence that would
reflect the seriousness of the offense, to promote
respect for the law, and to provide for just
punishment. . . .  An offense of this egregious
nature warrants very serious punishment because
without serious punishment for this kind of
depraved behavior, there isn't any reason to
respect the law.  If we are not prepared to

acknowledge this conduct as among the most serious
of criminal behavior, then our laws do not deserve
respect.

* * *

Now, Ms. Winemiller made the point every way she
could that the defendants did not start out
intending to murder Ms. Kalama.  They intended to
beat her dirty, are the quotes.  But whatever that
means, it certainly does not imply anything other
than brutality.  They intended to beat her, and
beat her they did, repeatedly.  One wonders how
she managed to survive as long as she did.
Somewhere along the way, when there were
opportunities for one or the other or both to
retreat, neither did.  More alcohol, more
encouraging one to the other, I think, is fair to
infer.  And we end up with the two of these
defendants and the juvenile offender and
Ms. Kalama taking her last breaths in the back of
a van, and then being dumped.

* * *

I'm required to consider, also, what sentences
have been imposed in cases that are similar, and
to avoid unwarranted disparity.  Meaning, if a
sentence is imposed here that is different than a
sentence imposed in other cases of Murder in the
First Degree, the difference has to be justified.

So we start from first trying to analyze whether
the other cases of Murder in the First Degree that
have been brought to my attention, all of which
arose on the Warm Springs reservation, whether
they are similar to these facts; and, if so, the
sentences imposed in those cases should affect the
decision I make today.  Unfortunately, I know a
lot about several of those cases because I had the
responsibility of imposing those sentences.  And I
do not see much similarity, other than the name of
the charge.  I don't see anything similar about
the circumstances of this case and other Murder I
sentences imposed by this Court or other judges in
this district.  There really isn't anything
similar.

39 - OPINION AND ORDER

I asked for guidance from the Probation Office to
determine whether there were life sentences
imposed in other cases or lengthy prison
sentences; again, to try to evaluate what length
of a prison term would be sufficient in these
circumstances.  And, as has been shared with the
parties, there were a number of cases identified,
not one of which resulted in death but involved
other kinds of circumstances.  An armed career
offender, so someone with a lifelong pattern of
using firearms and violence.  Bank robberies that
involved firearms and carjackings.  Pornography
cases with extreme facts.  So I -- I agree with
Mr. Gabriel that none of those cases are
particularly comparative to these circumstances.

* * *

Congress imposed a mandatory life sentence for
Murder in the First Degree for a reason.  That
reflected the official perspective of our
lawmakers that when Murder in the First Degree is
committed, life ought to be the sentence.  The
Government permitted, through its motion, for a
downward departure, the Court to consider lesser
sentences.  And, believe me, I have.  But in good
conscience, I do not agree that even the sentence
recommended by the Government is sufficient here,
in light of the seriousness of the conduct at
issue.

* * *

And I believe it is my duty, today, to impose a
life sentence for each of the two defendants.  So
that will be the judgment of the Court.

First Am. Mot. to Vacate, Ex. 106 at 135-146.

### B. Smith's Claim Based on the Government's Alleged Breach of the Plea Agreement at Sentencing

As noted, Smith asserts defense counsel erred when they
failed to object to the government's breach of the Plea Agreement
at sentencing.

40 – OPINION AND ORDER

## 1. The Law

"'[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.'" *United States v. Alcala-Sanchez*, 666 F.3d 571, 575 (9th Cir. 2012)(quoting *Santobello v. New York*, 404 U.S. 257, 262 (1971)). "A plea agreement is a contract, and the government is held to its literal terms." *Alcala-Sanchez*, 666 F.3d at 575 (citation omitted). "Requiring the government to strictly comply with the terms of a plea agreement encourages plea bargaining, 'an essential component of the administration of justice' because it ensures that a defendant gets the benefit of his or her bargain — the presentation of a united front to the court.'" *Id*. (quoting *Santobello*, 404 U.S. at 260). "It does not matter that a breach is inadvertent or "'that the statements or arguments the prosecutor makes in breach of the agreement do not influence the sentencing judge.'" *Id*. (quoting *Gunn v. Ignacio*, 263 F.3d 965, 969–70 (9th Cir. 2001)).

The Ninth Circuit has made clear that the "government breaches its agreement with the defendant if it promises to recommend a particular disposition of the case, and then either fails to recommend that disposition or recommends a different one." *United States v. Heredia*, 768 F.3d 1220, 1231 (9th Cir. 2014). "The government's promise to recommend a

particular disposition can be broken either explicitly or implicitly." *Id*. "The government is under no obligation to make an agreed-upon recommendation 'enthusiastically.' However, it may not superficially abide by its promise to recommend a particular sentence while also making statements that serve no practical purpose but to advocate for a harsher one." *Id*. (citations omitted). Thus, "the government breaches its bargain with the defendant if it purports to make the promised recommendation while 'winking at the district court' to impliedly request a different outcome." *Id*. (quoting *United States v. Has No Horses*, 261 F.3d 744, 750 (8th Cir. 2001)). "An implicit breach of the plea agreement occurs if, for example, the government agrees to recommend a sentence at the low end of the applicable Guidelines range, but then makes inflammatory comments about the defendant's past offenses that do not provide the district judge with any new information or correct factual inaccuracies." *Heredia*, 768 F.3d at 1231 (citations omitted).

### 2. Analysis

Smith contends the government breached the provision of the Plea Agreement in which it recommended a § 5K1.1 downward departure when the government "compared . . . Smith's case unfavorably with other cases in the District of Oregon, described . . . Smith's conduct as worse than that of other defendants in the district, and made other statements that

contradicted its promise and obligation to sincerely argue for imposition of no more than 35 years' imprisonment."

As a preliminary matter the Court notes the majority of the statements Smith relies on were made by AUSA Gabriel during his presentation related to Lawrence's sentence. For example, Smith points to Gabriel's statement: "But Ms. Lawrence's behavior was -- it was just more heinous. It was more horrific." Similarly, AUSA Gabriel agreed with the Court's statement made during AUSA Gabriel's discussion of Lawrence's sentence that "this case does seem to stand apart from the others." In addition, AUSA Gabriel's statement that "this is probably an ag murder case in state court because there was an intent to torture and maim the victim here" was made during his presentation related to Lawrence's sentence. It is questionable whether defense counsel who represents a defendant who is not present may object during the government's separate sentencing presentation as to a different defendant who is represented by a different attorney. Thus, the failure of Smith's counsel to object to AUSA Gabriel's presentation at Lawrence's sentencing is unlikely to support Smith's claim for ineffective assistance of counsel.

In any event, Smith also asserts her defense counsel rendered ineffective assistance when they failed to object to AUSA Gabriel's statement during his sentencing

presentation related to Smith that "the murder here of Faron Kalama was the worst, but it could be conditioned with [what] was arguably the worst or among the worst because of that McKinley murder, 13, 14 years ago" and failed to identify AUSA Gabriel's statement as a breach of the Plea Agreement.

Although AUSA Gabriel made various statements regarding the nature and/or severity of the crime to which Smith had pled guilty, he also moved for a downward departure pursuant to the terms of the Plea Agreement. In addition, AUSA Gabriel argued in favor of the government's recommendation when the Court expressed concern as to whether a downward departure was warranted. For example, USA Gabriel conceded the comparator cases in which individuals had received life imprisonment did not involve death, but he also pointed out that "[t]he criminal history of some of these defendants was much worse than the criminal history of these defendants." AUSA Gabriel also noted "with respect to the child exploitation cases . . . those cases addressed prolific child pornography producers, who were habitual offenders. And the social science does say that the recidivism rate for sex offenders such as that is so incredibly high, that they present a dangerousness." AUSA Gabriel sought to distinguish this case from other cases in which defendants had received life sentences. AUSA Gabriel also pointed out repeatedly to the Court that "defendants did provide substantial

assistance, which relieves the Court from the obligation to impose life."  When the Court asked the government to explain "[w]hy . . . the sentence you're seeking [is] sufficient, given the seriousness of the criminal behavior at issue here," AUSA Gabriel defended the government's request for a downward departure based on the age of Smith and Lawrence; their difficult, traumatic, and violent relationships and childhoods; and their abuse as factors that "may not have been present in the other cases that were presented to the Court for comparison."  In short, AUSA Gabriel conceded the facts of the crime to which Smith had pled guilty were quite serious, but he also vigorously defended the government's recommendation for a downward departure consistent with the Plea Agreement.  Thus, AUSA Gabriel's conduct is not the kind of conduct that courts have found breached plea agreements.

In *Alcala-Sanchez*, for example, the government "promised to recommend a total offense level of 12 and no more than a 33-month sentence and instead submitted a sentencing summary chart recommending a total offense level of 20 and a 78-month sentence."  666 F.3d at 575-76.  The Ninth Circuit held the government breached the plea agreement and noted "[i]t does not matter that the breach was inadvertent, caused by a heavy workload for government lawyers, or the result of cases getting handed from person to person at the U.S. Attorney's Office."  *Id*.

at 576.  Similarly, in *United States v. Luciano* the Ninth Circuit

concluded the government breached the plea agreement when

> [u]nder the plain language of the plea agreement,
> if the government determined that [the defendant]
> had provided substantial assistance, it was
> obligated to move the court, pursuant to U.S.S.G.
> § 5K1.1, "to impose a sentence below the
> otherwise-applicable" Guidelines range of 6-12
> months.  Although it filed a section 5K1.1 motion
> asserting that [the defendant] had provided
> substantial assistance, the government recommended
> a 6-month sentence that was within, rather than
> below, the "otherwise applicable" Guidelines
> range.

765 F. App'x 350, 351 (9th Cir. 2019).  In *Heredia* the Ninth

Circuit concluded the government breached the plea agreement even

though it abided by the letter of the agreement.  The court

explained:

> Here, the parties agreed to recommend that Morales
> receive a prison term equal to the low end of the
> applicable Guidelines range plus a three-year term
> of supervised release.  The government breached
> its agreement, however, through its repeated and
> inflammatory references to Morales's criminal
> history in its sentencing memorandum. . . .
> [G]iven the opportunity to argue for the low-end
> sentence it had promised to recommend, the
> government offered a series of prejudicial
> "statements related to the seriousness of the
> defendant's prior record."  *Whitney*, 673 F.3d at
> 971.  The central theme of the government's
> sentencing position was that Morales was a
> dangerous recidivist who had spent twenty years
> flouting the law and menacing others.  Whether
> intentional or not, the government breached the
> plea agreement by implicitly recommending a higher
> sentence than agreed upon.
>
> * * *
>
> Indeed, given the government's promise of

leniency, it is notable that its sentencing
memorandum contained no mitigating information at
all. Rather, it emphasized that Morales, a
"danger to the community," needed to be
"deterre[d]" because of his "20-year criminal
history," his "consistent disregard" for the law,
and his criminal "propensity." The reader is left
to wonder why the government believed a low-end
Guidelines sentence was appropriate in the first
place. Accordingly, we conclude that, as a whole
and in context, the government's pejorative
comments about Morales's criminal history and
detailed descriptions of his prior offenses served
"no purpose" but to argue for a harsher punishment
than it had agreed to recommend. By implicitly
advocating for a sentence other than the
stipulated one, the government breached the plea
agreement.

768 F.3d at 1232-34 (quotations omitted).

Here, in contrast, AUSA Gabriel's comments about
the facts of this case and the nature of the charge were made in
the context of addressing the Court's express concerns that a
sentence less than a life sentence would be insufficient to
achieve the goals of the sentencing guidelines. AUSA Gabriel,
unlike the prosecutor in *Heredia*, did not make the promised
recommendation "while winking at the district court' to impliedly
request a different outcome." As noted, AUSA Gabriel
acknowledged the Court's concerns about a sentence less than life
and argued for a lesser sentence for Smith based on her
cooperation, her history, and her particular situation. On this
record, therefore, the Court concludes AUSA Gabriel did not
implicitly or explicitly breach the Plea Agreement.

Accordingly, the Court concludes Smith's counsel

did not provide ineffective assistance when they failed to object

to the government's alleged breach of the Plea Agreement.

**C.   Smith's Claim Based on Defense Counsel's Failure to Consider the Possibility that the Court Would Impose a Life Sentence**

Smith asserts she received ineffective assistance of counsel at sentencing when defense counsel failed to consider the possibility that the Court would impose a life sentence.

In her Supplemental Declaration Kristen Winemiller, testifies:

> As [defense counsel] approached sentencing and during sentencing, we continued to believe that, as a practical matter, a life sentence was off the table. We believed that she would be sentenced within the negotiated range. As the sentencing hearing began, I began to wonder whether the Court was considering a sentence above the negotiated range but I expected – wrongly – that sentencing would be continued if such drastic action was imminent.
>
> Our failure to understand the true stakes at sentencing was, in part, a result of our undue reliance on local practice. In an ordinary case in the district, local practice had been that . . . the Court would impose a sentence within the range agreed upon by the parties or provide the parties with explicit advance notice that the plea, as negotiated, was not acceptable to the Court. The Court did provide increasingly explicit warnings but they came very close in time to the actual imposition of the sentence and we did not realize the need to react more quickly and emphatically. We continued with our sentencing presentation as if nothing had changed, not as a matter of strategy but out of a failure to fully comprehend the gravity of the Court's warnings.

Suppl. Decl. of Kristen Winemiller at ¶¶ 5-6.

Even if defense counsel's failure to appreciate fully that the Court could impose a life sentence despite the

Plea Agreement fell below an objective standard of reasonableness, Smith fails to establish prejudice. Smith does not identify the way in which counsel's fuller appreciation of the risk would have resulted in an alternative strategy at sentencing and would have created a reasonable probability that she would have received a lesser sentence. Winemiller states in her Supplemental Declaration that if defense counsel had appreciated a life sentence was truly a possibility, they would have called more witnesses and presented more evidence specific to Smith's difficult background and abuse, they would have requested a continuance to evaluate the comparator cases, and they would have objected vigorously to various potential procedural problems such as AUSA Gabriel's alleged breach of the Plea Agreement and the bifurcation of the sentencing hearing.

The Court, however, fully appreciated Smith's violent and difficult background and circumstances when it decided on a life sentence. The Court also concluded the comparator cases were unhelpful, and, therefore, the Court did not consider them. In addition, the Court has already concluded AUSA Gabriel did not breach the Plea Agreement. Finally, even if the hearing had not been bifurcated, the Court would still have been deeply troubled by the facts of the crime and reached the same conclusion that a sentence less than life would not achieve the goals of the sentencing guidelines. The Court, therefore,

concludes Smith has not established the result of the sentencing proceeding would have been different but for defense counsel's failure to consider the possibility that the Court would impose a life sentence.

Accordingly, the Court concludes Smith's counsel did not provide ineffective assistance when they failed to consider the possibility that the Court would impose a life sentence.

### D. Smith's Claim Based on Counsel's Failure to Object to the Presentation and Use of Comparator Cases

In her Brief in Support of her First Amended Motion to Vacate Smith alleges she received ineffective assistance of counsel when counsel failed to "object, on due process grounds, when the Court considered information beyond that contained in the record to sentence" Smith. Specifically, Smith asserts counsel should have objected to the government's presentation of "partial sentencing information about other cases in the District of Oregon," objected to the "Court's separate request for sentencing materials from other cases in the District of Oregon," and objected to "the Court's reliance on its own memory and recollection of the details from other murder cases in the District of Oregon." Smith also asserts defense counsel provided ineffective assistance "[w]hen, at sentencing, the Court's statements made it plain that the Court considered defendants' conduct worse than that of others convicted of First Degree Murder in the District of Oregon [and] defense counsel failed to

move for a continuance on the basis that the defense had not had a fair or meaningful opportunity to understand, evaluate, and present information about those cases."  The government asserts Smith's claim related to use of the various comparator cases is barred by the resolution of her direct appeal.

Generally a defendant may not relitigate in a § 2255 proceeding those issues that have been resolved on appeal.  *See, e.g., United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985) (The defendant "also claims . . . he was denied effective assistance of counsel because his attorney failed to raise double jeopardy, due process, res judicata, and collateral estoppel challenges during his probation revocation hearing.  Since these challenges [were raised and decided on appeal, they] would all have been meritless, [and, therefore, the defendant] cannot claim that his counsel's failure to raise them constituted ineffective assistance."); *United States v. Ramirez*, 327 F. App'x 751, 752 (9th Cir. 2009)(The defendant "is barred from using a § 2255 motion to relitigate issues decided on direct appeal.").

On appeal of Smith's case the Ninth Circuit dismissed Smith's claim that her "sentences were improperly influenced by consideration of other crimes committed in the District of Oregon" and explained:

> The [district] court . . . dismissed the other
> crimes that it considered as "not . . . reasonably
> comparable" to [Smith's] crime.  It then explained
> that the need to impose a comparable sentence in

this case was an "academic" issue that was "[not]
a factor that really provide[d] any help" in
determining the correct sentence.  The
consideration of other crimes thus appears to have
played little if any role in the district court's
sentencing decision.

*United States v. Smith*, 630 F. App'x 672, 675 (9th Cir. 2015).

Thus, in this case, as in *Redd*, any challenge by defense counsel

to the Court's use of comparator cases provided by the Probation

Office, the government, or the Court's own memory would have been

meritless because Smith's challenge to the use of comparator

cases was raised and dismissed on appeal.  The Court, therefore,

concludes Smith cannot claim defense counsel's failure to object

to the use of comparator cases constituted ineffective assistance

of counsel.  *See Ramirez*, 327 F. App'x at 752 ("Therefore, even

assuming the failure of Ramirez's attorney to object to the

admission of this testimony is deficient performance, Ramirez

cannot show prejudice because the testimony was admissible.")

(citing Strickland, 466 U.S. at 688)).

        Accordingly, the Court concludes Smith's counsel did

not provide ineffective assistance when they failed to object to

the Court's consideration of information beyond that contained in

the record when sentencing Smith.

    **E.    Smith's Claim Based on Counsel's Failure to Advise the
           Court that Winemiller Had Represented a Defendant in
           One of the Comparator Cases**

        Smith asserts she received ineffective assistance of

counsel when defense counsel "failed to advise the Court that because attorney Winemiller had represented one of the defendants the Court was comparing to . . ., ethical restrictions precluded the defense from engaging in a full and fair comparison of the two defendants, putting defendant Smith in a constitutionally untenable disadvantage."

The record, however, reflects AUSA Gabriel stated in his presentation that "Ms. Winemiller represented Ronald McKinley, who received a 480-month prison sentence" in a possible comparator case. Def.'s First Am. Mot. to Vacate, Ex. 106 at 113. Thus, the Court was advised of that fact during the proceeding. More importantly, the Court concludes Smith cannot establish Winemiller's representation of a defendant in a possible comparator case was prejudicial because the Court did not consider the comparator cases in reaching its sentencing decision. Smith, therefore, cannot establish "there is a reasonable probability that, but for counsel's . . . error[], the result of the proceeding would have been different" on that basis. *Strickland,* 466 U.S. at 694.

Accordingly, the Court concludes Smith's counsel did not provide ineffective assistance when they failed to advise the Court that Winemiller had represented a defendant in one of the potential comparator cases in light of the fact that the government apprised the Court of that fact, and, in any event,

the Court did not consider any comparator cases.

**F.    Smith's Claim for Defense Counsel's Comparison of Smith's Case to Outcomes under Oregon Law**

Smith asserts she received ineffective assistance of counsel when defense counsel "invited a comparison to [the outcome under] Oregon law in . . . Smith's sentencing submission and then pursued that comparison at sentencing."  Even if defense counsel's comparison to Oregon law fell below an objective standard of reasonableness under prevailing professional norms, which is questionable, the Court finds Smith has not established prejudice.

At sentencing the government expressly argued comparisons to state law are irrelevant, and the Court agreed. Specifically, the Court noted:

> I don't think there's a lot to argue about in terms of the comparison between the ways in which this conduct could have been charged [in state and federal court].  The fact is [Smith] admitted responsibility for conduct that is Murder in the First Degree, and she got the Government to agree to open the door to the Court exercising discretion for something other than a mandatory life sentence.  So I don't think this comparison [to state law] provides any help at all in trying to analyze, in the end, what is a reasonable sentence.

Def.'s First Am. Mot. to Vacate, Ex. 105 at 120-21.  Thus, the Court did not consider defense counsel's comparison to state law in sentencing.  The Court, therefore, concludes Smith has not established "a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different."

Accordingly, the Court concludes Smith's counsel did not provide ineffective assistance when they "invited a comparison to Oregon law in . . . Smith's sentencing submission and then pursued that comparison at sentencing" because the Court did not consider the state-law comparisons.

## IV. Ineffective Assistance Claims Based on Appeal

Smith alleges she received ineffective assistance of counsel on appeal[3] when appellate counsel failed to argue that "the government's breach of a plea agreement warranted remand for re-sentencing before a different judge." Smith also asserts appellate counsel provided ineffective assistance on appeal when she failed to argue that "the 'harmless error' rule did not apply to the law of contractual plea agreements" and "failed to petition the appellate court for reconsideration or en banc review after it" applied the harmless-error rule.

The Court has already concluded the government did not breach the Plea Agreement. The Court, therefore, also concludes Smith did not receive ineffective assistance of counsel on appeal when appellate counsel failed to argue the government's breach of a plea agreement warranted remand for resentencing before a different judge.

---

[3] Kristen Winemiller represented Smith on appeal.

As to Smith's assertion that appellate counsel provided
ineffective assistance on appeal when she failed to argue that
the "harmless-error" rule did not apply to the law of contractual
plea agreements, the Ninth Circuit has made clear that it reviews
the issue for plain error absent an objection to an alleged
breach of the plea agreement at trial. *See, e.g., United States
v. Hernandez-Castro*, 814 F.3d 1044, 1045 (9th Cir. 2016)
(reviewing the defendant's claim that the government breached the
plea agreement for plain error because the defendant "did not
raise this argument at sentencing.")(citing *Puckett v. United
States*, 556 U.S. 129, 135 (2009)); *United States v. Gonzalez-
Aguilar*, 718 F.3d 1185, 1187 (9th Cir. 2013)(same). Smith,
therefore, has failed to establish either that appellate
counsel's performance fell below an objective standard of
reasonableness under prevailing professional norms or that the
result of the proceeding would have been different "but for"
appellate counsel's errors.

Accordingly, the Court concludes Smith's counsel did not
provide ineffective assistance when she failed to argue that "the
government's breach of a plea agreement warranted remand for
re-sentencing before a different judge," failed to argue that
"the 'harmless error' rule did not apply to the law of
contractual plea agreements," and/or "failed to petition the
appellate court for reconsideration or en banc review after it"

applied the harmless error rule.

**V.    Smith's Claim Related to Cumulative Errors**

Finally, Smith asserts:  "To the extent that this Court were to conclude that the constitutional deprivations viewed individually were harmless, not prejudicial, or otherwise not warranting relief, it must conclude that the cumulative effect of the multiplicity of errors (in any combination) does."

The Ninth Circuit has "'granted habeas relief under the cumulative effects doctrine when there is a 'unique symmetry' of otherwise harmless errors, such that they amplify each other in relation to a key contested issue in the case.'"  *Smith v. Pennywell*, 742 F. App'x 230, 232 (9th Cir. 2018)(quoting *Ybarra v. McDaniel*, 656 F.3d 984, 1001 (9th Cir. 2011)).  Although Smith points to a number of alleged potential errors, the Court has concluded most of the items identified are not error or that Smith has not established prejudice.  The Court, therefore, concludes Smith "has failed to establish a 'unique symmetry' of errors that amplify a key contested issue."  *Smith*, 742 F. App'x at 232.

In summary, the Court denies Smith's First Amended Motion to Vacate, Set Aside or Correct Sentence.  In addition, the Court finds Smith has not made a substantial showing that she was denied a constitutional right, and, therefore, the Court declines to issue a Certificate of Appealability.

## **CONCLUSION**

For these reasons, the Court **DENIES** Smith's First Amended Motion (#283) Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by A Person in Federal Custody and **DECLINES** to issue a Certificate of Appealability.

IT IS SO ORDERED.

DATED this 13th day of August, 2019.


/s/ Anna J. Brown

_____

ANNA J. BROWN
United States Senior District Judge